# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

LOREN D. HOCHSTETLER, JR.,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 16-CV-2116-LRR

**REPORT AND RECOMMENDATION**

_____

Plaintiff Loren D. Hochstetler, Jr., seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Hochstetler argues that the administrative law judge (ALJ), Thuy-Anh T. Nguyen, erred in determining residual functioning capacity (RFC) because the ALJ gave less weight to the RFC opinion of the treating neuropsychologist than to consultative and non-examining psychological consultants. I recommend **affirming** the ALJ's decision.

## I.    BACKGROUND[1]

Hochstetler filed an application for DI benefits on October 15, 2013, alleging disability based on anxiety, depression, and memory problems. AR 16, 67. His application was denied initially and on reconsideration. AR 16, 66-90. As part of those reviews, state agency consultants from the Iowa Disability Determination Service

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 12).

evaluated Hochstetler's mental RFC.[2] Mental RFC assessments were completed by Dr. Jennifer Wigton, Ph.D., on December 9, 2013, and by Dr. Russell Lark, Ph.D., on April 25, 2014. AR 72-74, 85-88. Hochstetler also met with psychologist Dr. Carroll D. Roland on April 21, 2014. AR 311-12. Dr. Roland reviewed Hochstetler's prior records and gave an opinion regarding Hochstetler's mental RFC based on his one-time examination. AR 311-12.

Hochstetler requested a hearing before an ALJ, and a hearing was held on October 26, 2015. AR 34, 104-05. Hochstetler was 54 years old at the onset of his alleged disability and 57 years old at the time of his administrative hearing. Doc. 12 at 3. Both Hochstetler and vocational expert Carmen Mitchell testified at the hearing. AR 35. On December 1, 2015, the ALJ issued a written opinion, following the familiar five-step process outlined in the regulations[3] for determining whether Hochstetler was disabled. AR 16-29. The ALJ found that Hochstetler suffered from severe impairments of amnestic disorder, cognitive disorder, anxiety disorder, and depressive disorder, but that none of Hochstetler's impairments met or equaled applicable listings. AR 19-20. To determine whether Hochstetler's impairments prevented him from working, the ALJ determined Hochstetler's RFC:

> [Hochstetler] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Hochstetler] could perform simple repetitive tasks, in a routine and low stress work setting.

---

[2] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

[3] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. § 404.1520(a)(4). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

> Low stress is defined as occasional changes in the work setting and occasional decision-making. [Hochstetler] would be off-task for 10 percent of the workday. He could not work at a production-rate pace. He could have only occasional interaction with coworkers.

AR 20-21. In evaluating Hochstetler's RFC, the ALJ considered treatment records, medical opinions, Hochstetler's statements about his symptoms, statements from Hochstetler's mother (to which the ALJ gave little weight), and a questionnaire completed by Hochstetler's most recent employer, United Equipment Accessories (to which the ALJ gave some weight). AR 21-27. The ALJ determined that Hochstetler's "medically determinable impairments could . . . be expected to cause some of the alleged symptoms," however, the ALJ concluded that Hochstetler's "statements concerning the intensity, persistence[,] and limiting effects of the symptoms were not credible to the extent they were inconsistent with" the RFC determined by the ALJ. AR 26.

The ALJ assigned little weight to the opinions of psychologist Dr. Richard Roberts, Ph.D., and Hochstetler's treating psychiatrist, Dr. Abdur Rahim, M.D. AR 23-25. Dr. Roberts, who evaluated Hochstetler on three occasions, opined that Hochstetler "is vocationally disabled and should proceed with his plans to try to receive []DI benefits." AR 375. In addition, he concluded that Hochstetler would "have issues in remembering locations and work like procedures up to 20 percent of an eight hour work day or a 40 hour work week"; would "be off task for up to 20 percent of an eight hour day or 40 hour work week"; and would "be unable to sustain an ordinary routine without special supervision for up to 20 percent of an ordinary work day or work week." AR 383-84. He denied, however, that Hochstetler would be unable "to carry out very short and simple instructions" or unable to "accept instructions" and criticism. *Id.* Dr. Rahim concluded that Hochstetler would have some problem remembering and understanding instructions and that he would not be able to carry out instructions, maintain attention or pace, interact appropriately with coworkers or the public, or use good judgment to respond to changes in the workplace. AR 306-07.

3

The ALJ gave great weight to most of Dr. Roland's opinion and to the opinions of Dr. Wigton and Dr. Lark. AR 24-25, 27. Dr. Roland concluded that Hochstetler could not perform "complex tasks but could function in a repetitive work environment that does not require interaction with the general public, customers, etc.," such as an assembly line. AR 312. In addition, Dr. Roland noted that Hochstetler's history indicates he is able to relate to supervisors, coworkers, and the general public. AR 312. Dr. Wigton concluded that Hochstetler had "adequate concentration and memory span to follow simple instructions and complete assigned tasks," and therefore, could perform work similar to his past work as a machine washer. AR 76-77; *see also* AR 72-73. Finally, Dr. Lark opined that Hochstetler was able to "complete simple, repetitive tasks on a sustained basis" and recommended that his disability claim be denied. AR 88, 90.

Based on the determination of Hochstetler's RFC, the ALJ found that although Hochstetler could not perform his past relevant work, a significant number of jobs existed in the national and Iowa economies that Hochstetler could perform, such as laundry worker, kitchen helper, and automotive detailer. AR 27-28.

The Appeals Council denied Hochstetler's request for review on November 7, 2016 (AR 1), making the ALJ's decision that Hochstetler was not disabled the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Hochstetler filed a timely complaint in this court (Doc. 3). *See* 20 C.F.R. § 422.210(c). The parties briefed the issues (Docs. 13, 14, 16), and the Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d

at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Hochstetler argues that the ALJ erred in determining RFC in two ways: (1) failing to give controlling weight to the opinions of Dr. Roberts, who Hochstetler argues is a treating source; and (2) attributing weight to medical opinions from consultative and non-examining sources. *See* Doc. 13. In relation to his second argument, Hochstetler seems to argue that the opinions of consultative and non-examining sources cannot constitute some medical evidence to support an ALJ's RFC opinion (he relies on *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000)), although his argument is somewhat muddled.

When determining a claimant's RFC, the ALJ considers medical opinions "together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(b) (2017).[4] The ALJ must give controlling weight to a treating-source opinion if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Id.* § 404.1527(c)(2). "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016).

When evaluating a medical RFC opinion, the ALJ considers the following factors to determine the weight to assign the opinion:

---

[4] New regulations for evaluating medical opinions went into effect on March 27, 2017, and some, by their terms, apply retroactively. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The Eighth Circuit has twice applied these new rules retroactively, which are substantively the same as the old rules. *See, e.g.*, *Combs v. Berryhill*, 868 F.3d 704, 709 n.6 (8th Cir. 2017); *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017); *but see Young v. Berryhill*, 689 F. App'x 819, 821 n.3 (5th Cir. 2017) (per curiam) (applying old rules in effect "at the time of the ALJ's determination, rather than" the new rules). I cite to the new 2017 regulations.

5

Case 6:16-cv-02116-LRR-KEM   Document 17   Filed 01/02/18   Page 5 of 11

(1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting 20 C.F.R. §§ 404.1527(d), 416.927(d) (2008)); *see also* 20 C.F.R. § 404.1527(c) (2017). An ALJ is not required to give any weight to a source's overall conclusion that a claimant is disabled. *See Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007); 20 C.F.R. § 404.1527(d)(1).

Keeping the substantial-evidence standard in mind, I will address each of Hochstetler's arguments in turn.

### A. Weight Given to Dr. Roberts' Medical Opinions

Hochstetler argues that the ALJ erred in failing to give sufficient weight to the opinions of Dr. Roberts. Doc. 13. Hochstetler contends Dr. Roberts is a treating physician whose opinion is entitled to controlling weight. Doc. 13.

A doctor will be regarded as a "treating source" when he has provided treatment or evaluation and has an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1527(a)(2). The regulations provide that an "ongoing treatment relationship" is present when the evidence establishes that the doctor has seen the claimant "with a frequency consistent with accepted medical practice for the type of treatment [or] evaluation required for [the claimant's] medical condition." *Id*. A doctor that has seen the claimant only a few times, or only after long intervals, may be designated as a treating source if this limited frequency is typical of the claimant's condition. *Id*. The ALJ will not consider a doctor to be a treating source if the relationship is based on the claimant's need to obtain support for a claim of disability, rather than a need for treatment or evaluation. *Id*.

6

Here, Dr. Roberts saw Hochstetler on three separate occasions—on September 11, 2013; October 9, 2014; and September 16, 2015—for neuropsychological evaluations. AR 281-83, 325-29, 372-76. Over the course of these appointments, Dr. Roberts spent 12.75 hours evaluating Hochstetler, which included "face-to-face contact, scoring . . . tests, and . . . drafting . . . report[s]." AR 283, 329, 376.

I need not reach the question whether Dr. Roberts was a treating source, because regardless of how Dr. Roberts is classified, the ALJ was justified in giving his opinions little weight. "[T]reating physician opinions may receive limited weight if they are 'conclusory or inconsistent with the record.'" *Tippe v. Colvin*, 669 F. App'x 332, 333 (8th Cir. 2016) (per curiam) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016)). An RFC opinion that "is conclusory, consisting of 'checklist forms, cit[ing] no medical evidence, and provid[ing] little to no elaboration,' is 'properly discounted.'" *Id.* (alterations in original) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). An ALJ may also assign less weight to the RFC opinion of a treating physician based on inconsistencies with the claimant's activities of daily living. *See Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006).

Substantial evidence supports the ALJ's determination that Hochstetler had minimal restrictions in his ability to care for himself. At his hearing before the ALJ, Hochstetler reported that he drives himself thirty to forty-five minutes to see his children. AR 41-42. Hochstetler also testified that he makes his own microwave meals, goes on walks, and spends time with his kids and neighbors. AR 51-53. In addition, Hochstetler stated in function reports that he cleans his own house, purchases groceries, pays bills, plays memory games with his grandchildren, watches television, and goes fishing and camping. AR 206-208, 228-29. The ALJ could properly find that Hochstetler's minimal limitations in his activities of daily living were inconsistent with the limitations in concentration and attention imposed by Dr. Roberts. *See, e.g., Hacker*, 459 F.3d at 937-38 (substantial evidence supported that claimant's ability to "follow TV shows and her son's sporting events, plan and maintain three gardens, drive a car, and fly to Denver to

7

babysit her young nieces on a regular basis" were inconsistent "with a marked limitation of function in concentration, persistence, or pace"); *Pickner v. Sullivan*, 985 F.2d 401, 404 & n.2 (8th Cir. 1993) (holding that claimant's "relatively normal daily functions and social activities"—including the ability to do housework and laundry, vacuum, cook, clean, attend church, go out to dinner, and shop with her husband—were inconsistent with a "loss of memory or inability to concentrate" so severe that claimant was unable to work).

Indeed, Dr. Roberts' treatment notes recognize that although Hochstetler's memory test results were "weak, . . . it is unlikely that [Hochstetler] could function as well as he does in daily life[] if these scores truly represented his current level of recent memory capacity in daily life." AR 327. And Dr. Roberts did not explain why he found Hochstetler so limited and did not cite any medical evidence to support his conclusions. The vocational limitations relied on by Hochstetler are contained in a letter sent from Dr. Roberts to Hochstetler's attorney on October 26, 2015. AR 383-84. The letter is a copy of a letter initially drafted by Hochstetler's attorney, which asks Dr. Roberts to answer five questions regarding Hochstetler's capacity to perform vocational tasks. *Id.* Dr. Roberts answered each of these five questions with a handwritten "yes" or "no" and returned the letter to Hochstetler's attorney. *Id.* For example, the first question asks "[i]n your opinion, in a . . . work like setting, would [Hochstetler] have issues in remembering locations and work like procedures up to 20 percent of an eight hour work day or a 40 hour work week?" *Id.* Dr. Roberts wrote a simple "yes" beneath this question without elaborating or referring to any medical evidence to support this opinion. *Id.*

The ALJ did not err in giving little weight to the "yes" and "no" responses contained in Dr. Roberts' letter because these vocational limitations were inconsistent with Hochstetler's activities of daily living and were nothing more than conclusory statements.

### B. *Weight Given to the Opinions of Dr. Roland, Dr. Wigton, and Dr. Lark*

Hochstetler next argues that the ALJ erred in giving great weight to the opinions of consultative psychologist, Dr. Roland, and non-examining state agency psychological consultants, Dr. Wigton and Dr. Lark. Doc. 13. As a result of this error, Hochstetler alleges that the ALJ's decision is not supported by any medical evidence and therefore, must be reversed. *Id*.

Hochstetler essentially argues that the ALJ could not give more weight to Dr. Roland's, Dr. Wigton's, and Dr. Lark's opinions than to Dr. Roberts' opinion. He argues that Dr. Roberts' opinion is entitled to greater weight because he is Hochstetler's treating neuropsychologist, which Hochstetler argues makes Dr. Roberts a specialist. Hochstetler is correct that the opinion of a specialist is generally entitled to greater weight than a nonspecialist. *See Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000). But "this rule does not apply whe[n] the opinion of the specialist is controverted by substantial evidence or is otherwise discredited." *Id*. As discussed above, the ALJ did not err in discrediting Dr. Roberts' opinion. Because the ALJ gave a good reason for giving little weight to Dr. Roberts' opinion, the ALJ could properly assign greater weight to RFC opinions from non-treating, nonspecialist sources. *See id.*; *Ponder v. Colvin*, 770 F.3d 1190, 1194-95 (8th Cir. 2014) (concluding that the treating physician's RFC opinion "cannot trump" three non-examining consultants' opinions "solely because he was [claimant's] primary care physician" when his opinion was inconsistent with claimant's daily activities); *see also Vance v. Berryhill*, 860 F.3d 1114, 1120-21 (8th Cir. 2017) (holding that when the ALJ gives a good reason for discounting a treating physician's opinion, the ALJ may "rely instead on the opinions of the state agency medical consultants," as long as those opinions are "more consistent with the medical evidence").

Hochstetler also argues that the opinions from non-treating sources relied on by the ALJ do not constitute "substantial medical evidence" to support the ALJ's RFC determination. Doc. 13. As a general rule, the ALJ's RFC determination must be

9

supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). "[A]n ALJ is . . . 'required to consider at least some supporting evidence from a [medical] professional.'" *Id.* (alteration in original) (quoting *Lauer*, 245 F.3d at 704).

Hochstetler relies on *Nevland*, in which the only medical opinions in the record were from "non-treating, non-examining physicians." 204 F.3d at 858. Here, on the other hand, the record contains RFC opinions from treating psychiatrist Dr. Rahim; Dr. Roberts, who Hochstetler argues is a treating source; and from consultative examiner Dr. Roland; in addition to the opinions from non-examining sources Dr. Wigton and Dr. Lark. AR 72-74, 85-88, 285-86, 306-07, 311-12, 383-84. Dr. Roland, a licensed psychologist, examined Hochstetler in April 2014. AR 311-12. During this examination, Dr. Roland administered formal memory testing and interviewed Hochstetler. *Id.* Based on the interview, Hochstetler's history, and results of the formal memory testing, Dr. Roland opined that Hochstetler "is not considered appropriate for complex tasks but could function in a repetitive work environment that does not require interaction with the general public, customers, etc." *Id.* Dr. Wigton and Dr. Lark found similar limitations as Dr. Roland, except they opined that Hochstetler would not have difficulties working with people. AR 72-74, 85-88. The ALJ adopted some limitations related to Hochstetler's social abilities, finding that Hochstetler could only interact with coworkers occasionally. AR 21. The ALJ noted that Hochstetler's most recent employer, United Equipment Accessories, indicated that Hochstetler adequately related to supervisors. AR 22, 213. In addition, Hochstetler reported that he gets along with everyone. AR 25, 229-30.

The RFC opinions from Dr. Wigton, Dr. Lark, and Dr. Roland support the ALJ's RFC determination. AR 20-21, 72-74, 85-88, 383-84. The ALJ credited their opinions over Dr. Roberts' opinion after conducting an independent review of the medical and

10

Case 6:16-cv-02116-LRR-KEM    Document 17    Filed 01/02/18    Page 10 of 11

other evidence. AR 20-27. Substantial evidence, including some medical evidence, thus supports the ALJ's RFC determination. *See Stormo v. Barnhart*, 377 F.3d 801, 806-807 (8th Cir. 2004) (finding some medical evidence supported the ALJ's physical RFC determination when it was consistent with the state agency medical consultants' opinions, and at least one treating physician's physical RFC opinion was in the record but assigned non-controlling weight); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023-24 (8th Cir. 2002) (holding that some medical evidence supported the ALJ's RFC determination when the ALJ rejected the treating source's RFC opinion and relied on the opinion of a one-time examining physician and an independent review of the medical evidence).

### III. CONCLUSION

I recommend that the district court judge **affirm** the decision of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 2nd day of January, 2018.

_Kelly K.E. Mahoney_
Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa